## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division – Detroit

LITTLE CAESAR ENTERPRISES, INC.,
   a Michigan corporation, and

LC TRADEMARKS, INC.,
   a Michigan corporation,

     Plaintiffs,

     v.

INTERNATIONAL RESTAURANT
   GROUP, LLC,
   a Michigan corporation, and

JIMMY ASMAR,
   a Michigan citizen, and

     Defendants.

Case No. _____

## **COMPLAINT**

Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (collectively, "Little Caesar") bring this action for breach of contract, trademark infringement, unfair competition, and trade dress infringement. Little Caesar has terminated its Franchise Agreements with Defendants based on Defendants' breach of those Agreements by failing to operate their restaurants in accordance with Little Caesar's standards, abandoning several of their restaurants, and failing to pay contractually required liquidated damages. Despite the termination, Defendants continue to hold themselves out as LITTLE CAESARS franchisees.

Defendants' continued, unauthorized use and enjoyment of Little Caesar's confidential business system and the LITTLE CAESARS trademarks, trade name, and trade dress breaches the Franchise Agreements and violates the Lanham Act, 15 U.S.C. §§ 1114, *et seq*. Little Caesar seeks injunctive, monetary, and other relief against Defendants for the reasons set forth below.

## THE PARTIES

1.     Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. It is engaged in the business of franchising independent businesspersons to operate LITTLE CAESARS restaurants throughout the United States. Little Caesar's franchisees are licensed to use the LITTLE CAESARS trade name, trademarks, and service marks and to operate under the LITTLE CAESARS System, which involves the production, merchandising, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.     Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. LC Trademarks, Inc. is the owner of the trademark, service mark, and trade name "LITTLE CAESARS," and related marks. It licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in

turn licenses them to LITTLE CAESARS franchisees.

3.     Defendant International Restaurant Group, LLC is a Michigan limited liability company. International Restaurant Group owned twenty-four LITTLE CAESARS franchises located in Ohio and Kentucky (Store Nos. 1586-0001, 1586-0002, 1586-0003, 1586-0004, 1586-0006, 1586-0007, 1586-0009, 1586-0010, 1586-0011, 1586-0012, 1586-0014, 1586-0015, 1586-0016, 1586-0017, 1586-0018, 1586-0021, 1586-0022, 1586-0023, 1586-0024, 3168-0001, 3168-0002, 3168-0003, 3168-0004, and 3168-0005), pursuant to Franchise Agreements with Little Caesar.

4.     Defendant Jimmy Asmar is a natural person and a citizen and resident of the State of Michigan. Asmar is the sole member of of International Restaurant Group and personally guaranteed its obligations under its Franchise Agreements with Little Caesar pursuant to executed personal guarantees.

5.     Defendants International Restaurant Group and Jimmy Asmar are collectively referred to as "IRG."

### JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 & 1121; and 28 U.S.C. §§ 1331, 1338, & 1367(a).

7.     This Court has *in personam* jurisdiction over Defendants because they reside in this district, conduct business in this district, and the events giving rise to Little Caesar's claims occurred in this district.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the venue provision contained in the parties' Franchise Agreements.

## BACKGROUND FACTS

### Little Caesar

9.     Plaintiff Little Caesar Enterprises, Inc. is the franchisor of the LITTLE CAESARS System.

10.     Plaintiff LC Trademarks, Inc. owns numerous federal registrations for the mark "LITTLE CAESARS" and related marks. Among those registrations are Registration Nos. 2036763, 2028607, 2259637, 3904450, 3925216, and others. Each of these registrations is in full force and effect.

11.     Plaintiff Little Caesar Enterprises, Inc. has the exclusive license to use and to license others to use the LITTLE CAESARS marks and trade name and has used them at all times relevant to this action to identify its restaurants and the pizza and other products associated with those restaurants.

12.     The trade dress of LITTLE CAESARS restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and décor (including, without limitation, menu boards, display racks, and servers' uniforms) that are featured at the restaurants operated by LITTLE CAESARS franchisees.

13.     The LITTLE CAESARS trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality,

4

and is nonfunctional.

14.    The LITTLE CAESARS trademarks and trade dress are utilized in interstate commerce.

### The Parties' Rights And Obligations Under The Franchise Agreements

15.    IRG was formerly licensed to use the LITTLE CAESARS trademarks, trade name, trade dress, and business system in accordance with the terms of its Franchise Agreements with Little Caesar.

16.    The Franchise Agreements required IRG to operate its franchised restaurants in accordance with the operational standards, procedures, and specifications prescribed by Little Caesar.

17.    Little Caesar provides each of its franchisees with a set of manuals and guidelines (collectively, the "Manuals"), which set forth in detail the procedures, methodology, and standards applicable to the operation of a Little Caesars restaurant.

18.    Taken together, the Manuals provide detailed and specific guidance and standards regarding the operation of a Little Caesars franchise.

19.    Among the Franchise Agreement provisions setting out required operational standards, procedures, and specifications are the following:

> **5.1.  Importance of Compliance with System Standards**. Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality

operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations.

. . .

**5.3.    Conformance to System Standards**. To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such methods, standards, procedures, and specifications without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System.

5.3.1. Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar standards and specifications; and shall refrain from using non-conforming items;

5.3.2. Franchisee shall sell or offer for sale only such products and services as (a) meet Little Caesar's uniform standards of quality, (b) have been expressly approved for sale in writing by Little Caesar, and (c) have been prepared in accordance with Little Caesar's methods and techniques for product preparation. Franchisee shall sell or offer for sale all products and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System. Franchisee shall not deviate from Little Caesar's methods, standards, procedures, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served. Franchisee shall discontinue selling and offering for sale any products or services which Little Caesar disapproves in writing at any time.

5.3.3. Franchisee shall purchase and install, at Franchisee's expense, all fixtures, furnishings, equipment, decor, signs, and

other items as Little Caesar may reasonably direct from time to time in the Manuals or otherwise in writing; and shall refrain from installing or permitting to be installed on or about the Restaurant premises, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Little Caesar's standards and specifications.

5.3.4. Franchisee shall display promotional signs or other written promotional materials or participate in other promotions, in the manner requested by Little Caesar. . . .

. . .

**5.5.   Maintenance of Restaurant Premises.**   Franchisee shall maintain the Restaurant premises (including adjacent public areas) in a clean, orderly condition and in excellent repair; and, in connection therewith, Franchisee shall, at its expense, make such additions, alterations, repairs, and replacements thereto (but no others without Little Caesar's prior written consent) as may be required for that purpose, including, without limitation, such periodic repainting, repairing, and replacing of obsolete or deteriorated signs, furnishings, fixtures, equipment, and decor as Little Caesar may reasonably direct by written notice to Franchisee. Franchisee shall complete all work specified in the notice within sixty (60) days after receipt of such notice.

20.     IRG also covenanted to keep its restaurants open and in normal operation for at least such minimum hours and days as Little Caesar may specify and to devote its full time and best efforts to the management and operations of its restaurants. (*Id.* §§ 5.2, 15.1.)

21.     IRG agreed that the failure to comply with the terms of the Franchise Agreements would constitute a default under the Agreements and that Little Caesar had the right to terminate the Agreements if IRG failed to cure a default within the time required under the Agreements. (*Id.* §§ 13.2.20, 13.3.)

7

22.    IRG also agreed that under certain circumstances Little Caesar had the right to immediately terminate the Franchise Agreements without providing an opportunity to cure, including if IRG:

a.    Committed three or more defaults of any kind, whether or not cured after notice, within a twelve-month period, or committed three or more defaults of the same kind at any time during the term of the agreements (*id.* § 13.2.10);

b.    Willfully or repeatedly failed to meet any requirements or specifications established by Little Caesar with respect to product quality, physical property, condition of equipment or materials used, products manufactured, or the menu (*id.* § 13.2.10);

c.    Ceased to operate or abandoned a franchise for a period of three consecutive days (*id.* § 13.2.2);

d.    Failed to pay any required payment to Little Caesar within ten days after receipt of written notice from Little Caesar that any such payment was overdue (*id* § 13.2.11); or

e.    Breached any material term of the Franchise Agreements that was not by its nature curable, or that went to the essence of the Agreements (*id.* § 13.2.22).

23.    In addition, IRG agreed that Little Caesar had the right to terminate any

other Franchise Agreement between IRG or any of its affiliates and Little Caesar in the event that a Franchise Agreement between IRG or its affiliate and Little Caesar was terminated for a default under that agreement. (*Id.* §§ 13.2.21, 13.4.)

24.   Furthermore, under the terms of the Franchise Agreements, IRG agreed that its right to use Little Caesar's proprietary marks was limited to uses authorized by the Franchise Agreements, and that "any unauthorized use thereof shall constitute an infringement." (*Id.* § 7.2.5.)

25.   It agreed that it would use Little Caesar's proprietary marks, including but not limited to Little Caesar's trademarks, trade names, service marks, logos, emblems, trade dress, and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id*. § 7.2.1.)

26.   IRG was permitted to use Little Caesar's proprietary marks only in accordance with the LITTLE CAESARS System and the related standards and specifications, which "underlie the goodwill associated with and symbolized by the [p]roprietary [m]arks." (*Id.* § 7.1.3.)

27.   And it agreed that, during the term of the Franchise Agreements and after termination, it would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in Little Caesar's proprietary marks. (*Id.* § 7.3.2.) IRG also covenanted not to "do or perform any other act injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the LITTLE CAESARS

System. (*Id.* § 15.2.1.)

## **Defendants' Post-Termination Obligations**

28.    IRG agreed that, in the event that its Franchise Agreements were terminated, it would "immediately cease to operate" the restaurants and would not thereafter, directly or indirectly, "represent to the public or hold itself out as a present or former franchisee of Little Caesar." (Franchise Agreement § 14.1.)

29.    In addition, it agreed that it would immediately and permanently cease to use, in any manner whatsoever, any products, ingredients, trade secrets, confidential methods, procedures, and techniques associated with the LITTLE CAESARS System and/or proprietary marks. (*Id*. § 14.2.)

30.    It also agreed to return to Little Caesar all of Little Caesar's confidential manuals and other confidential information. (*Id*. § 14.9.)

31.    IRG agreed that, upon termination of the Franchise Agreements, it would not use "any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar." (*Id* § 14.5.)

32.    And it agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains the LITTLE CAESARS Proprietary Marks, as the term is defined in the Franchise Agreements, and to furnish evidence of compliance within thirty days after the termination of the Agreements. (*Id.* § 14.3.)

33.   Under the Franchise Agreements, IRG agreed that, upon termination, Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of its franchised restaurants. In addition, it agreed to assign to Little Caesar, at its request, any interests it had in any lease for the restaurant premises. (*Id.* §§ 14.4, 14.10.)

34.   IRG also agreed to a reasonable post-termination covenant against competition, which states that it may not, directly or indirectly, for itself or through, on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one year following the termination of the Franchise Agreements (or a final court order regarding the same), in any Designated Market Area of any LITTLE CAESARS restaurant, and for a continuous uninterrupted period of two years following the termination of the Franchise Agreements (or a final court order regarding the same), in the Designated Market Area(s) in which its former LITTLE CAESARS restaurants are located. (*Id.* § 15.3.) IRG further agreed that breaching this and any other covenants in the Franchise Agreements would cause Little Caesar irreparable injury for "which no adequate remedy at law may be available, and agree[d] to pay all court costs and

attorneys' fees incurred by Little Caesar in obtaining injunctive or other equitable legal relief . . . ." (*Id.* § 15.4.)

35.     It agreed that it would pay to Little Caesar and its affiliates all sums owed, and Little Caesar's costs, expenses, and reasonable attorneys' fees incurred by reason of any default or termination of the Franchise Agreements, or the enforcement of IRG's post-termination obligations. It also agreed to pay Little Caesar liquidated damages. (*Id.* §§ 14.6, 14.7, 14.8, 15.4, 23.9.)

36.     Pursuant to the personal guarantees attached as Exhibit A to the Franchise Agreements, Defendant Jimmy Asmar agreed to be personally bound by the covenants and obligations of the Franchise Agreements, including the obligation to pay Little Caesar and its affiliates and the obligation to comply with the post-termination covenant against competition.

## Defendants' Defaults Under Their Franchise Agreements And The Termination Of Their Franchise Agreements

37.     In late May and early June 2022, Little Caesar inspected several of IRG's restaurants and found numerous violations of Little Caesar's operational standards, including but not limited to those involving health, food safety, and sanitation.

38.     IRG received copies of the reviews completed during the inspections, which noted, by category, each violation and also provided comments that further explained many of the violations. Little Caesar then sent IRG a Notice of Default

and Notice to Cure dated July 8, 2022, that listed the various health, safety, and critical operational defaults that Little Caesar had observed at the restaurants. The Notice informed IRG that its Franchise Agreements would be terminated unless it came into compliance with Little Caesar's operating standards.

39.     Little Caesar reinspected the same restaurants on August 22, 2022. It found that IRG had failed to cure many of the defaults noted in the prior Notice to Cure. Uncured defaults included the failure to properly mark dough and other prepared products for expiration; the failure to properly wash and sanitize food storage containers; the failure to offer core menu items for sale; and generally low product quality and cleanliness levels. New defaults were also observed. IRG again received a copy of the reviews completed during the inspections identifying specific deficiencies in the restaurants that deviated from Little Caesar's specifications and requirements.

40.     As a result of the August 22, 2022 follow-up inspections, Little Caesar sent IRG another Notice of Default and Notice to Cure dated September 23, 2022, that again listed the various health, safety, and critical operational defaults that Little Caesar had observed at the restaurants—both the uncured defaults and new defaults. The Notice informed IRG that its Franchise Agreements would be terminated unless it came into compliance with Little Caesar's operating standards.

41.     Between November 2 and December 1, 2022, Little Caesar re-inspected

the same IRG restaurants as well as others. It found that IRG had again failed to cure many of the same defaults noted in the prior Notice to Cure. Several new defaults were also observed. As with the previous inspections, IRG received a copy of the reviews completed during the inspections identifying specific deficiencies in the restaurants that deviated from Little Caesar's specifications and requirements.

42.    Little Caesar sent IRG additional Notices of Default and Notices to Cure dated February 6, 2023, as a result of the inspections. The Notices listed the various health, safety, and critical operational defaults that Little Caesar had observed at the restaurants—both uncured and new defaults. As with the previous notices, the Notice informed IRG that its Franchise Agreements would be terminated unless it came into compliance with Little Caesar's operating standards.

43.    In late March 2023, Little Caesar conducted another inspection of IRG's restaurants and found continued violations of Little Caesar's operational standards, including but not limited to those involving health, food safety, and sanitation.

44.    In addition to the myriad and repeated operational standards defaults, IRG abandoned several of its restaurants without Little Caesar's authorization and failed to pay contractually required liquidated damages in connection with the early termination of the Franchise Agreements for the abandoned restaurants.

45.    Specifically, in or around September 2021 and June 2022, IRG closed

and abandoned Store Nos. 1586-0021 and -0023, respectively, without Little Caesar's approval.

46.     Thus, by letter dated December 12, 2022, Little Caesar informed IRG that the Franchise Agreements for those two restaurants were terminated based on the closures and demanded that IRG pay Little Caesar the approximately $144,000 in liquidated damages owed pursuant to Section 14.8 of the Franchise Agreements. Section 14.8 sets forth a calculation (based on IRG's average gross sales and the amount of time left in the Franchise Agreement's term) for the liquidated damages owed to Little Caesar in the event a Franchise Agreement is terminated before the end of its term as a result of a default by IRG.

47.     IRG has failed to pay Little Caesar the liquidated damages owed from the early termination of the Franchise Agreements for Store Nos. 1586-0021 and -0023 based on IRG's abandonment of those restaurants.

48.     Based on IRG's numerous defaults of the Franchise Agreement, by Notice of Default and Notice of Franchise Agreement Termination dated April 14, 2023, Little Caesar terminated IRG's Franchise Agreements effective immediately upon IRG's receipt of the notice.

49.     The Termination Notice informed IRG that Little Caesar would not enforce the termination by itself, but instead would submit the matter to a court for

judicial enforcement. IRG elected to continue to operate its franchises, in violation of its post-termination obligations, pending judicial enforcement of the termination.

50.     On May 30, 2023, Little Caesar sent IRG a Supplemental Notice of Default and Notice of Termination based on IRG's closure of additional stores and failure to pay liquidated damages.

51.     IRG's actions have caused and continue to cause monetary damage and irreparable harm to Little Caesar, including harm to Little Caesar's reputation and goodwill.

**COUNT I**
**<u>Breach of Contract</u>**

52.     The allegations of paragraphs 1 through 51 are hereby incorporated by reference.

53.     The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein, including the post-termination obligations.

54.     These breaches constitute good cause for terminating the Franchise Agreements.

55.     As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II
## Trademark Infringement

56.     The allegations of paragraphs 1 through 55 are hereby incorporated by reference.

57.     The use in commerce of Little Caesar's trademarks and trade names by the Defendants outside the scope of the Franchise Agreements and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar. Such unauthorized use of Little Caesar's trademarks and trade names infringes its exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

58.     The acts of the Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

59.     As a direct and proximate result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## Unfair Competition

60.     The allegations of paragraphs 1 through 59 are hereby incorporated by

reference.

61. The use in commerce of Little Caesar's trademarks, trade names, and trade dress by the Defendants outside the scope of the Franchise Agreements and without the consent of Little Caesar is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

62. The acts of the Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

63. As a direct and proximate result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
## Trade Dress Infringement

64. The allegations of paragraphs 1 through 63 are hereby incorporated by reference.

65. The Defendants' restaurants are identified by signs, exterior appearance, packaging, containers, and other items on which the LITTLE CAESARS proprietary marks appear in the same distinctive style and color scheme

as Little Caesar uses for the pizza restaurants operated by Little Caesar's licensees.

66.    The Defendants' use of trade dress that is identical or confusingly similar to the LITTLE CAESARS trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Defendants' restaurants, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their restaurants with the LITTLE CAESARS restaurants operated by Little Caesar's licensees. Such adoption of Little Caesar's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

67.    The Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

68.    As a result of the Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreements and constitutes good cause for terminating the Franchise Agreements;

B.    Enter an injunctive order ratifying and enforcing the termination of the

Franchise Agreements as of the effective date of Little Caesar's Notice of Franchise Agreement Termination, or as otherwise provided by applicable law;

C.    Enter an order enjoining Defendants, and all those acting by, through, or in concert with them, by preliminary and permanent injunction, from using the LITTLE CAESARS trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Little Caesar;

D.    Enter an injunctive order directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable post-termination obligations as provided in the Franchise Agreements, including but not limited to promptly paying all sums owed to Little Caesar and its affiliates, complying with the post-termination noncompete, complying with any request from Little Caesar to purchase any equipment or other assets of the franchise, and taking all steps to transfer their leasehold interests in the franchise to Little Caesar or its designee in the event that Little Caesar elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

E.    Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.     Enter judgment in favor of Plaintiffs for the damages they have suffered, including liquidated damages as provided for by the Franchise Agreements, as a result of Defendants' conduct, plus prejudgment interest allowed by law;

G.     Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and Section 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

H.     Award Plaintiffs such other relief in its favor as this Court may deem just and proper.

_/s/Larry J. Saylor_
Larry J. Saylor (P28165)
Kimberly A. Berger (P56165)
MILLER, CANFIELD, PADDOCK
 & STONE P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@millercanfield.com
Berger@millercanfield.com

Robert L. Zisk (admitted in E.D. Mich.)
Justin L. Sallis (admitted in E.D. Mich.)
LATHROP GPM LLP
The Watergate
600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
robert.zisk@lathropgpm.com
justin.sallis@lathropgpm.com

_Attorneys for Plaintiffs_